## FELT & TARRANT MFG. CO. v. UNITED STATES.

### No. H—62.

Court of Claims.
Feb. 17, 1930.

Green, Judge, dissenting.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery and J. Marvin Haynes, both of Washington, D. C., James O. Wynn., Jr., of New York City, and C. J. McGuire, of Washington, D. C., on the brief), for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Ottamar Hamele, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GRAHAM, and GREEN, Judges.

BOOTH, Chief Justice.

The history of this tax case follows in sequential order, viz.:

(a) April 1, 1918: Plaintiff filed income and excess-profits tax return, tax liability ................. $260,328.05

(b) June 15, 1918: Plaintiff paid tax disclosed by above return .......... 260,328.05

(c) November 10, 1919: Commissioner determined an overassessment of ...... 20,769.77

(d) June 19, 1920: Commissioner credited overassessment (item c) to 1918 taxes ................. 20,769.77

(e) February 2, 1923: Plaintiff filed written waiver of limitations extending date to March 1, 1924.

(f) March, 1923: Commissioner determined a deficiency in 1917 tax of......... 19,486.85

(g) February 29, 1924: Plaintiff filed claim for a refund of 1917 tax to amount of .............. 214,122.01
Refund claim was accompanied by a brief and request for oral argument. The refund claim is set out in the findings.

(h) December 17, 1924: Commissioner determined plaintiff's 1917 tax as follows:
Total tax liability ..$241,994.49
Overassessment ... 17,050.55

(i) February 16, 1925: Official allowance of refund claim (item g) for $17,050.55. Rejected as to balance claimed.

(j) April 10, 1925: Plaintiff paid balance of 1917 tax as per rulings of the commissioner .............. 2,436.30

(k) April 15, 1925: Commissioner abated tax of 1917 to extent of ............ 17,050.55

Plaintiff sues to recover $26,909.50 and interest, alleged as an overpayment of taxes due to a failure to allow a deduction from gross income for the year 1917 for exhaustion of patents acquired by the plaintiff and used by it in its business prior to March 1, 1913. The defendant concedes the amount and likewise admits that the single impediment to recovery is the sufficiency of the refund claim filed February 29, 1924. The various steps taken in the final determination of plaintiff's 1917 tax liability, as appears from the history of the case set forth above, discloses indisputably that the refund claim of February 29, 1924, was filed with the Commissioner within the statutory period of limitations and over a year prior to the final determination of the tax liability of the plaintiff for 1917.

The refund claim of February 29, 1924—the important instrument involved herein—reads in part as follows:

"The taxpayer has filed with the commissioner a claim for special relief under section 210 of the 1917 Revenue Act for the excess-profits tax assessed for this period.

"This claim is filed to protect all possible legal rights of the taxpayer, pending, and at the date of, the settlement of the claim for relief. Computation has been made as follows:

Total profits taxes paid....... $227,789.38
Less: Decrease in income taxes on account of profits taxes credit ................... 13,667.37
Refund claimed ............. 214,122.01"

The taxpayer requested an oral hearing and the right of appeal in the event of an adverse decision on the part of the unit, and before any formal rejection of the claim was made.

Section 210 of the Revenue Act of 1917 (40 Stat. 307) provides for special assessments, and it is to be noted that the refund claim makes no specific mention of a deduction from gross income on account of exhaustion of patents.

Section 1318 of the Revenue Act of 1921 (42 Stat. 227, 314 [26 USCA § 156]), upon this subject, provides as follows:

"That section 3226 of the Revised Statutes is amended to read as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof. * * * *"

Article 1036, Treasury Regulations 62, prescribed as follows:

."Claims for refund of taxes erroneously collected.—Claims by the taxpayer for the refunding of taxes and penalties erroneously or illegally collected shall be made on Form 843. In this case the burden of proof rests upon the claimant. All the facts relied upon in support of the claim should be clearly set forth under oath."

Section 1318 and the regulations cited undoubtedly require that all the facts relied upon for a refund should be set forth under oath. The courts have construed section 1318 and the regulations made in pursuance of the authority granted therein. The cases, which we need not review, in detail, are harmonious upon the point that the purpose and intent of the statute is to afford the Commissioner an opportunity to correct errors specified in the refund claim, and to enable the taxpayers to escape the necessity for needless and burdensome litigation. Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 46, 72 L. Ed. 253; Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 49 A. L. R. 459; Feather River Lumber Co. v. United States, 66 Ct. Cl. 54; Jonesboro Grocer Co. v. United States, 66 Ct. Cl. 320; Phœnix Glass Co. v. United States, (D. C.) 34 F.(2d) 217, P–H Fed. Tax Service, 1929, sec. 834; National Candy Co. v. United States, 67 Ct. Cl. 74. In the case of Tucker v. Alexander, supra, the Supreme Court, in speaking of the statute and regulations, used this language: "The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the con-

venience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery."

The Alexander Case turned upon the question of waiver of the sufficiency of the refund claim. A similar contention is advanced by the plaintiff in this case. It is to be observed from the history of this case that the plaintiff did *not* in its original tax return claim a deduction from gross income for the year 1917 for depreciation or exhaustion of patents owned and used by it. This is important, in view of the fixed attitude of the Internal Revenue Bureau with reference to claimed deductions of this character. The Commissioner's regulations 45, art. 163, p. 69, provided for a deduction from gross income on account of depreciation of patents. In article 167 of regulations 45, p. 70, it was provided that in computing depreciation allowance in case of a patent, the capital sum to be replaced was the cost not already deducted as a current expense, or its fair market value as of March 1, 1913, if acquired prior thereto. In an opinion from the Committee on Appeal and Review (Cumulative Bulletin III—1, p. 176), it was held that the right to charge off depreciation of patents was optional with the taxpayer, i. e., a privilege to do so if the taxpayer saw fit to avail himself of the privilege, and that the right to exercise the option or privilege extended to and was only open to the taxpayer during the time for filing the *original* return (italics ours) ; that, if not claimed in the original return for the year, the taxpayer with respect to that year was thereafter precluded from claiming the deduction. The foregoing opinion of the Committee on Appeal and Review was supported by a memorandum opinion of the Solicitor of Internal Revenue, and from henceforward until June, 1925, the Commissioner observed and continued the policy of refusing deductions from gross income on account of depreciation of patents unless the deduction was specifically claimed in the *original* return for the year involved. In January, 1925, the Board of Tax Appeals, in the case of the Union Metal Manufacturing Co., 1 B. T. A. 395, decided that a taxpayer was entitled to depreciation of patents, notwithstanding the fact that no claim for such a deduction had been made in the original return, thereby withholding approval of the previous and settled policy of the bureau. Subsequent to the decision of the Board the Commissioner, in Internal Revenue Cumulative Bulletin IV—2 for the period January 1 to June 30, 1925, published at page 3 thereof, some time after the last-mentioned date, acquiesced in the decision of the board in the Union Metal Mfg. Co. Case, and thereafter the rule of the bureau as to an allowance from gross income of deduction on account of depreciation of patents was changed and the allowance given consideration. Therefore it is apparent from recited events that at the time the plaintiff's refund claim was filed and on the date it was rejected the published decisions of the Commissioner absolutely prevented the plaintiff, in so far as the bureau was concerned, from taking a deduction from gross income for depreciation of patents for the year 1917. It would have been a useless and futile act to have specified in detail with respect to patent depreciation in the face of adhered to adjudications upon the subject, and the Commissioner was not deprived of any knowledge or in any way misled by the failure of the plaintiff to make a detailed claim as to patent depreciation. Had it been so made it would have been rejected upon prior holdings. Under these circumstances it is, we think, established that, in so far as the intended purpose of the statute and regulations is concerned—an intent and purpose ascribed to them in various decisions of the courts—the Commissioner was not denied the privilege of passing upon the merits of plaintiff's tax liability under the return filed and the refund claim of February 29, 1924. The determination of the plaintiff's tax liability was evidently involved. It required a period of seven years to bring it to a conclusion, and the final closing of the proceedings was not until April 10, 1925. The plaintiff, it is true, might have petitioned the Commissioner for a reconsideration of his refund claim following the reversal of policy with respect to patents in June, 1925; but it is also true that a reconsideration was manifestly fraught with the apparent and almost certain rejection for the very reasons insisted upon by the defendant here, and the additional danger of delay in reconsideration carrying its final determination beyond the statutory limitations allowing suit for the recovery of illegal tax exactions in this court. If the oft-repeated adjudication of the intent of the law and the purpose to be served in exacting, particularly in refund claims, is to govern in its application to an admitted illegal exaction, this case falls squarely within such a rule. The refund claim filed was much in excess of the amount sued for in this case. It was rejected as to $197,071.46, and it is difficult to perceive a valid reason for denying judgment upon the restricted basis of a failure to do what would

have been of no benefit to either party if it had been done.

In addition to what has been said, the refund claim relied upon did on its face indicate in express terms a distinct reservation and determination to insist upon the refund of all illegal tax exactions. By the use of such comprehensive terms it is to say the least perfectly apparent that the taxpayer notified the Commissioner that all its legal rights would be insisted upon. True, such general terms do not meet the express provisions of the regulation; but as said, not without some merit, the Commissioner received the refund claim, acted upon it as it was, and a year thereafter actually granted a refund of $17,-050.55. No complaint was lodged as to its generality in any respect at the hearing thereon and no exceptions taken as to its consideration at any time. The Supreme Court reversed the lower court in the Tucker v. Alexander Case, supra. In the opinion the court said: "If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings."

In the above case there was an entire absence of any specification of the nature of the claim relied upon in the refund claim filed by the taxpayer, the taxpayer contending for a new and entirely different state of facts for relief. The government interposed no objections to the proceedings at the trial, and the Supreme Court reversed the decision of the lower court in refusing a judgment for the taxpayer, holding that the right to insist upon a strict claim for refund had been waived by the Commissioner. While it may be going too far to extend the rule in the above case to this one, nevertheless it is worthy of observation to call attention to the fact that in this case the plaintiff is not insisting upon a claim different from one falling within the comprehensive language used in the refund claim, and that the Commissioner was not in any sense misled as his prior rulings disclose, and he acted upon and made a refund without objection to the refund claim in any particular. The final action of the Commissioner as to the refund claim was confined to the subject-matter of section 210 of the Act of 1917, i. e., special assessment, and it seems to us that, notwithstanding the general language of the refund claim in other

respects, the Commissioner would have been warranted in refunding any sums found to be due as overassessments for other causes.

Judgment will be awarded the plaintiff for $26,909.50, with interest. It is so ordered.

WILLIAMS, LITTLETON, and GRAHAM, Judges, concur.

GREEN, Judge, dissents.